UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

MARK BLACKMAN,

    Plaintiff,

v.                                                      Case No. 3:16cv625-RV-HTC

PURIFOY CONSTRUCTION, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff, proceeding *pro se* and *in forma pauperis*, initiated this action on November 22, 2016, by filing a complaint alleging Defendants Tyrone Purifoy and Purifoy Construction discriminated and retaliated against him in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Age Discrimination in Employment Act ("ADEA"). ECF Doc. 1. Defendants were served and failed to answer or otherwise defend this suit. This matter is now before the Court on Plaintiff Mark Blackman's Motion for Entry of Default Judgment (ECF Doc. 33) and supporting declaration (ECF Doc. 41). For the reasons set forth herein, the undersigned respectfully recommends that a final judgment of default be entered against the Defendants in favor of the Plaintiff on Plaintiff's claim of retaliation under Title VII and that Plaintiff be awarded the amount of $7,500.00 in lost wages.

## I.  BACKGROUND

### A.  The Facts

The complaint sets forth the following facts, which are undisputed. *See Nishimatsu Const. Co., Ltd. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact[.]"). Plaintiff was employed by Defendant Purifoy Construction from July 21, 2014 until his termination on or around October 15, 2014. On one occasion, his supervisor, Bunny Brown, asked him, "[Y]ou think you are too old to do this kind of work?" ECF Doc. 1 at 4. Also, throughout Plaintiff's employment, Brown used the term "nigger" or "niggers" when referring to employees. *Id.* Plaintiff complained to Defendant Tyrone Purifoy about Brown "using these terms" and stated that he "did not care for it." *Id.* No action was taken against Brown. However, soon thereafter, Plaintiff's work hours were reduced, and he was subsequently terminated. Plaintiff alleges his reduced hours and subsequent termination were due to his "age (56), race (black) and in retaliation for complaining of discrimination." *Id.*

### B.  Procedural Background

At the Court's direction, both Defendants were served a copy of the complaint on February 16, 2017.[1] *See* ECF Docs. 11, 12. After Defendants failed to respond,

---

[1] Because Plaintiff was granted leave to proceed *pro se*, the Court directed the United States Marshal Service to serve Defendants personally.

Case No. 3:16cv625-RV-HTC

the Court set a status conference and ordered both parties to appear. ECF Doc. 13. Although Defendant Tyrone Purifoy appeared at the status conference, Defendants thereafter failed to comply with the Court's scheduling order (ECF Doc. 16) or otherwise participate in the litigation. *See* ECF Doc. 25. After Plaintiff's multiple attempts to contact Defendants went ignored (*see* ECF Docs. 18, 21, 22), Plaintiff moved for entry of a clerk's default. ECF Doc. 24. The Court granted Plaintiff's motion, and the clerk entered default against each Defendant on February 7, 2019. ECF Docs. 25, 26. Plaintiff has now moved for entry of a default judgment against the Defendants and seeks $29,436.00 in compensatory damages. ECF Docs. 33, 41.

## II.  LEGAL STANDARD AND ANALYSIS FOR DEFAULT JUDGMENT

After the clerk has entered a party's default, the opposing party may seek a default judgment against him. *See Bardfield v. Chisholm Properties Circuit Events, LLC*, 2010 WL 2278461 *6 (N.D. Fla. May 4, 2010) ("[T]he clerk's entry of default must precede an application to the district court for entry of default judgment."). Where a Plaintiff's claim for damages is not for a sum certain or a sum that can be made certain by computation, he must apply to the Court, rather than the clerk, for a default judgment. *See* Fed. R. Civ. P. 55(b)(2).

"Entry of default judgment is only warranted when there is 'a sufficient basis in the pleadings for the judgment entered.'" *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015) (quoting *Nishimatsu Constr. Co., Ltd. v. Houston*

*Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). "The requisite factual showing for a default judgment is similar to the factual showing necessary to survive a motion to dismiss for failure to state a claim." *Graveling v. Castle Mortg. Co.*, 631 F. App'x 690, 698 (11th Cir. 2015) (citing *Surtain*, 789 F.3d at 1245).

To survive a motion to dismiss for failure to state a claim, and, thus, to receive a default judgment, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002) (citing Fed. R. Civ. P. 8(a)(2)) (*Swierkiewicz* is still good law although the pleading standard has now changed after *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). The purpose of this requirement is to give the defendant fair notice of what the claim is and the grounds upon which it rests. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 55 (2007).

A. <u>Discrimination</u>

Title VII makes it unlawful for an employer to intentionally discriminate against its employees based upon protected personal characteristics including race, color, religion, sex and national origin. To establish a prima facie case of intentional discrimination, a Title VII plaintiff may rely upon direct, circumstantial, or statistical evidence. *See Holifield v. Reno,* 115 F.3d 1555, 1561–62 (11th Cir.1997). Where a plaintiff relies on direct evidence of discrimination, he need not allege a prima facie case of discrimination under the *McDonnell Douglas* framework. Otherwise, to state

a claim for discrimination under the *McDonnell Douglas* framework, a plaintiff must show: (1) membership in a protected group; (2) qualification for the job in question; (3) an adverse employment action; and (4) circumstances that support an inference of discrimination. *McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973).

The *McDonnell Douglas* framework sets forth an evidentiary standard and not a pleading standard. *Swierkiewicz*, 534 U.S. at 510. Thus, a court may properly enter default judgment on a claim of racial discrimination when the well-pleaded factual allegations of a complaint plausibly suggest that the plaintiff suffered an adverse employment action due to intentional racial discrimination, regardless of whether a plaintiff has set out detailed facts sufficient to show the existence of each element of his claim. *Surtain*, 789 F.3d at 1246 (holding that district court erred in denying motion for default judgment on determination that plaintiff failed to allege a prima face case under *McDonnell Douglas*); *Swierkiewicz*, 534 U.S. at 510.

Here, Plaintiff alleges his supervisor used racial slurs in the workplace, namely the term "nigger" or "niggers" when referring to employees, and that on one occasion she responded to him "you think you're too old to do this kind of work" when he refused to perform a task outside his normal duties. The undersigned finds that even when applying the pleading standard set out in *Surtain* and *Swierkiewicz*, Plaintiff has failed to state a claim for discrimination either under Title VII or the ADEA.

Blatant remarks "whose intent could be nothing other than to discriminate" constitute direct evidence of discrimination. *Id.* at 582. However, such remarks must be made by a decision maker, related to the challenged employment decision, and in temporal proximity to those decisions. *See Trotter v. Board of Trustees,* 91 F.3d 1449, 1453 (11th Cir. 1996); *see,* e.g., *Taylor v. Runyon,* 175 F.3d 861, 867 (11th Cir. 1999) (direct evidence of sex discrimination where decision maker told plaintiff she was denied promotion because her male competitor, who had a wife and children, needed the money more than plaintiff); *Caban–Wheeler v. Elsea,* 904 F.2d 1549 (11th Cir. 1990) (direct evidence of race discrimination where decision maker told Hispanic plaintiff that he "needed a black director"); *Lindsey v. American Cast Iron Pipe Co.,* 772 F.2d 799 (11th Cir. 1985) (direct evidence of age discrimination where decision maker told plaintiff that company wanted someone younger than plaintiff to fill assistant manager position).

The fact that Plaintiff's supervisor used racial slurs in the workplace and made one comment about Plaintiff's age does not "plausibly suggest" that Plaintiff was terminated because of his race or his age. In *Surtain*, for example, the Eleventh Circuit held that plaintiff had not alleged facts sufficient to state a claim under the American with Disabilities Act, where her claims were based solely on two facts: (1) that her employer knew she had visited a doctor and (2) the doctor concluded she could not return to work. *See Surtain*, 789 F. 3d at 1247 ("Knowledge that an

employee has visited a doctor and receipt of a conclusory doctor's excuse, without more, do not plausibly underpin an employer's perception that the employee suffers from a disability.").

Accordingly, the undersigned recommends that Plaintiff's motion for default judgment be denied as to Plaintiff's discrimination claim, both under Title VII and the ADEA.

B. Retaliation

Plaintiff also seeks a default judgment on his claims of retaliation under Title VII and the ADEA. Title VII is violated when a retaliatory motive plays a part in the discharge or when an employer is motivated by retaliatory animus, even if valid objective reasons for the discharge exist. The clause in the section of Title VII which addresses retaliation states that it is "an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter." *Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 555 U.S. 271, 274 (2009) (quoting 42 U.S.C. § 2000e–3(a)).

A *prima facie* case of retaliation under Title VII requires the plaintiff to show that: (1) he engaged in an activity protected under Title VII; (2) he suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action. *Pennington v. City of*

Case 3:16-cv-00625-MCR-HTC   Document 42   Filed 01/14/20   Page 8 of 16

Page 8 of 16

*Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001). The causal link element is construed broadly such that "a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated." *Id.* (citations and quotations omitted). A *prima facie* case of retaliation under the ADEA requires the exact same showing, except that the activity must, of course, be protected under the ADEA. *Stone v. Geico General Ins. Co.*, 279 F. App'x 821, 822 (11th Cir. 2008) (citations omitted).

    Here, Plaintiff alleges that he complained to Defendants his supervisor was using racial slurs and that subsequent to those complaints, the supervisor was not reprimanded, but Plaintiff's hours were reduced, until he was eventually terminated. These allegations are sufficient to state a prima facie case for retaliation under Title VII. They are sufficient to put the Defendants on fair notice of his claim and the complained of conduct. *See Wooten v. McDonald Transit Assoc., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015) (affirming entry of default judgment on retaliation claim under the ADEA where allegations, "while perhaps less detailed than [defendant] would prefer[,]" "are a far cry from the sort of 'unadorned, the defendant-unlawfully harmed me accusation decried in *Iqbal*").

    Plaintiff's allegations, however, are not sufficient to state a claim for retaliation under the ADEA because Plaintiff does not allege that he engaged in protected activity under the ADEA. Specifically, while Plaintiff alleges his

supervisor told him " you think you are too old to do this kind of work," he does not allege that he complained about that comment to Defendants. His allegation that he "believe[s]" he was retaliated against under the ADEA is too conclusory to satisfy the *Twombly* and *Iqbal* standards.

Accordingly, the undersigned recommends that a default judgment be entered against Defendants and in favor of Plaintiff on his claim of retaliation under Title VII and denied as to Plaintiff's claim of retaliation under the ADEA.

### III.   DAMAGES

If a plaintiff is entitled to default judgment, the court must then consider whether the plaintiff is entitled to the specific relief he requests in his motion for default judgment. *Hernandez v. Peckett's, Inc.*, 2017 WL 11084355 *3 (M.D. Fla. Aug. 16, 2017). "A court has an obligation to assure that there is a legitimate basis for any damage award it enters[.]" *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003); *see also Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985). Unlike well-pled allegations of fact, allegations relating to the amount of damages are not admitted by virtue of default; rather, the court must determine both the amount and character of damages. *Wallace v. The Kiwi Grp., Inc.*, 247 F.R.D. 679, 681 (M.D. Fla. 2008) (citing *Miller v. Paradise of Port Richey, Inc.*, 75 F.Supp.2d 1342, 1346 (M.D. Fla. 1999)). The

plaintiff bears the burden of proving to the court the amount of damages to which he is entitled, if any. *Id.*

Ordinarily, unless a plaintiff's claim is for a liquidated sum or one capable of mathematical calculation, the law requires the district court to hold an evidentiary hearing to fix the amount of damages. *See S.E.C. v. Smyth*, 420 F.3d 1225, 1231 (11th Cir. 2005). A hearing may be unnecessary only "when the district court already has a wealth of evidence… such that any additional evidence would be truly unnecessary to a fully informed determination of damages." *See id.* at 1232 n.13. Ultimately, damages should be awarded only if the record adequately reflects the basis for award via either a hearing or affidavits establishing the necessary facts. *Adolph Coors Co.*, 777 F.2d at 1544 (citations omitted).

In this case, Plaintiff's motion for default was not supported by any evidence of the amount of his damages. Thus, the undersigned held an evidentiary hearing on Plaintiff's motion on December 5, 2019. *See* ECF Doc. 34. Plaintiff appeared at the hearing, and Defendants did not appear.

During the hearing, Plaintiff represented to the Court that, while employed at Defendant Purifoy Construction, he worked approximately twelve (12) hours a day, five (5) or six (6) days a week and earned $12.00 per hour. He represented that, after he was terminated from Purifoy Construction, he was unable to obtain other employment due to medical conditions. He further represented that after he was

terminated by Defendants and before he obtained another permanent job, he operated an independent lawn care service, from which he earned, on average, $600 or $700 per month.  Finally, he represented that he began working at Clay's Hauling, LLC ("Clay's Hauling") in or about April of 2015, at which he worked five (5) or six (6) days a week and earned approximately $120 a day.

When asked if Plaintiff had any documentation to support the amount he earned while employed at Purifoy Construction, the length of time he was unemployed, or the amount he earned working lawncare and then with Clay's Hauling, Plaintiff stated he did not have documents available at that time.  Additionally, Plaintiff represented he was paid wages in cash, and that he did not file any tax returns during the relevant time period that could corroborate his income.  Following the hearing, and considering Plaintiff's *pro se* status, the undersigned gave Plaintiff an additional opportunity to file a declaration of damages and provide competent evidence to the Court regarding the amount of damages to which he believes he is entitled.  *See* ECF Doc. 40.

Subsequently, on December 26, 2019, Plaintiff filed a declaration of damages, in which he seeks lost wages from "September of 2014 until April of 2015 at a rate of 12.00 dollars an hour plus 2 hours overtime pay for… two hundred twenty-three days" for a total of $29,436.00.  ECF Doc. 41 at 1.  As a basis for his award, Plaintiff indicates that he "became employed with the defendant on July 21, 2014 and

remained employed with Defendant until September 2014[.]" *Id.* Plaintiff signed his declaration under penalty of perjury. *See* 28 U.S.C. § 1746 (stating that unsworn written declarations made under penalty of perjury have the same effect as sworn affidavits). The affidavit was not accompanied by any supporting documentation.

"The purpose of relief under the federal employment anti-discrimination laws is 'to make persons whole for injuries suffered on account of unlawful employment discrimination.'" *Massey Yardley*, 117 F.3d at 1251 (an ADEA case) (quoting *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418-19 (1975) (a Title VII case)). A Title VII plaintiff is entitled to back pay, which "is the difference between the actual wages earned and the wages the individual would have earned in the position that, but for the discrimination, the individual would have attained." *Akouri v. State of Florida Dep't of Transp.,* 408 F.3d 1338, 1343 (11th Cir. 2005) (quotation omitted). "Unrealistic exactitude is not required as the back pay calculation may be based on just and reasonable inference of the missing or imprecise figure." *Id.* (quotation omitted).

While a successful Title VII claimant is generally entitled to an award of back pay, the claimant must make a reasonable and good-faith effort to mitigate her damages. *Weaver v. Casa Gallardo, Inc.,* 922 F.2d 1515, 1527 (11th Cir. 1991)); *Giles v. General Elec. Co.,* 245 F.3d 474, 492 (5th Cir. 2001) ("Because it is an equitable remedy, back pay is subject to a duty to mitigate damages."). Both Title

VII and the ADEA require that a plaintiff "mitigate [his] damages through reasonably diligent efforts to seek employment that is substantially equivalent." *Lathem,* 172 F.3d at 794; *see also Massey Yardley*, 117 F.3d at 1251-52. "If the claimant decides to go into a dissimilar line of work, or to accept a demotion, his earnings must be deducted from any eventual backpay award." *Ford Motor Co. v. EEOC,* 458 U.S. 219, 232 n. 16 (1982) (citations omitted).

Here, the record does not adequately reflect the basis for an award of $29,436.00. In calculating that number, Plaintiff contends he worked eight (8) hours every day, 7 days a week, including any intermittent holidays, for 223 days at a rate of $12.00 per hour, as well as two (2) hours overtime every day for 223 days at a rate of $18.00 per hour. The undersigned does not find sufficient evidence in the record to support a lost wages award of $29,436.00.

First, Plaintiff alleges he was fired on or around October 15, 2014, and began his new job at Clay's Hauling in April of 2015. Thus, Plaintiff is not entitled to back pay from September of 2014. *See Massey Yardley*, 117 F.3d at 1251 (indicating the injured victim is entitled to back pay only from the date of the discriminatory discharge). Second, the record does not reflect that Plaintiff worked every single day; on the contrary, Plaintiff represented at the evidentiary hearing that he worked only five (5) or six (6) days a week, not including holidays or other unforeseen time off.

Third, while the record does reflect that Plaintiff worked at least eight (8) hours a day at a rate of $12.00 per hour, it does not reflect that Plaintiff worked overtime at a rate of $18.00 per hour; indeed, Plaintiff did not state at the evidentiary hearing, nor anywhere other than in the mathematical calculation set forth in his declaration of damages, that he earned such an amount. *See Adolph Coors Co.*, 777 F.2d at 1544 (indicating that, while an affidavit may establish the facts necessary for an award of damages, it must be sufficiently detailed).

Fourth, the record indicates that Plaintiff did, in fact, mitigate his damages between October of 2014 and April of 2015 by operating a lawn care service for an unspecified period and from which he earned, on average, $600 or $700 per month. Although Plaintiff does not state for how many months he operated this business before beginning his new employment at Clay's Hauling, based on Plaintiff's representation at the hearing, it was for more than one (1) month.

Finally, according to Blackman, he was unable to obtain new employment after being terminated from Purifoy because of certain medical conditions. Plaintiff's inability to work due to medical conditions between October 2014 and April 2015 also reduces the amount of back pay to which Plaintiff is entitled. Back pay damages are generally available only for periods during which a plaintiff was "'available and willing to accept substantially equivalent employment' elsewhere; courts exclude periods where a plaintiff is unavailable to work, such as periods of

disability, from the back pay award." *Lathem v. Department of Children and Youth Servs.,* 172 F.3d 786, 794 (11th Cir. 1999) (quoting *Miller v. Marsh,* 766 F.2d 490, 492 (11th Cir. 1985)).

Based on the foregoing evidence, the undersigned finds that Plaintiff is entitled to back pay of $7,500.00, calculated as follows: ($12 per hour x 40 hours per week) = $480.00 x 20 weeks (subtracting four (4) weeks due to Plaintiff's medical conditions) = $9,600 – ($700.00 x three (3) months of lawn care service) = $7,500.00. *See Harper v. Thiokol Chem. Corp.*, 619 F.2d 489, 494 (5th Cir. 1980) (*citing LeBlanc v. Southern Bell Telephone & Telegraph Co.*, 460 F.2d 1228, 1229 (5th Cir. 1972), cert. denied, 409 U.S. 990, 993 (1973) ("In formulating relief in employment discrimination cases, the district court has broad discretion to fashion remedies as the equities of a particular case compel")).[2] Because Plaintiff is not represented, he is not entitled to attorneys' fees. *See Kay v. Ehrler*, 499 U.S. 432 (1991). Additionally, Plaintiff has not provided any evidence to support any other damages.

---

[2] Although the undersigned recognizes the evidence of damages presented by Plaintiff is less than what the undersigned typically sees or would expect, the undersigned also recognizes that Plaintiff has suffered some damage by his termination. Without the entry of a default judgment, Plaintiff would be unable to recover for the retaliation claim set forth in the Complaint. Additionally, Defendants were given a full and adequate opportunity to appear and, despite appearing at the court ordered status conference, failed to defend themselves against Plaintiff's claims.

## IV. CONCLUSION

Accordingly, it is respectfully RECOMMENDED that:

1. Plaintiff's Motion for Entry of Default Judgment (ECF Doc. 33) be GRANTED as to Plaintiff's claim for retaliation under Title VII, and DENIED as to Plaintiff's claim for retaliation under the ADEA and discrimination under Title VII and the ADEA.

2. Final judgment be entered in favor of Plaintiff and against Defendants in the amount of $7,500.00 for lost wages.

3. This case be closed.

DONE AND ORDERED this 14th day of January, 2020.

*s/ Hope Thai Cannon*
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> A copy of objections shall be served upon the Magistrate Judge and all other parties. A party failing to object to a Magistrate Judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.